# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

BENJAMINE MICHAEL THOMPSON, )
)
Petitioner, )
)
vs. )   Case No.  CIV-09-878-M
)
DAVID C. MILLER, Warden, )
)
Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking habeas relief from his state court convictions.  Chief United States District Judge Vicki Miles-LaGrange referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  A response has been filed, and the time for Petitioner to reply has passed.  See Order dated January 20, 2010.  Thus, the matter is now at issue.  For the following reasons, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions by a jury for distribution of a controlled dangerous substance (methamphetamine) (Count 1) and conspiracy to commit the crime of distribution of a controlled dangerous substance (methamphetamine) (Count 2) for which he was sentenced to 100 years imprisonment on each count, to be served consecutively. Petition, 2;[1] Case No. CF-2005-657, District Court of Payne County, Docket.[2]

---

[1]The page numbers cited for the petition are the pre-printed numbers in the upper right hand corner of the "form" petition.  Page 2 is actually the first page of the petition.  Additionally, Petitioner has omitted pages 6 through 11 and inserted twelve typewritten pages after page 5.  These

The Oklahoma Court of Criminal Appeals affirmed Petitioner's convictions and sentences on direct appeal. Petition, 3; Thompson v. State, No. F-2007-270 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3). The Oklahoma Court of Criminal Appeals then denied Petitioner's petition for rehearing. Response, Ex. 5. Petitioner applied to the trial court for post-conviction relief which was denied. Petition, 4; Response, Ex. 7. Petitioner appealed the denial to the Oklahoma Court of Criminal Appeals which affirmed the trial court's decision. Petition, 5; Thompson v. State, No. PC-2009-18 (Okla. Crim. App. Mar. 25, 2009) (attached to Response as Ex. 9).

Petitioner raises twenty grounds for relief. In Ground One, he contends that the evidence was insufficient to support his convictions. Petition, 5-1. In Ground Two, Petitioner complains that prosecutorial misconduct deprived him of a fair trial. Petition, 5-1. In Ground Three, Petitioner alleges that the trial judge's failure to sequester the jury denied him due process. Petition, 5-2. In Ground Four, Petitioner argues that the admission of hearsay evidence denied him due process. Petition, 5-2. In Ground Five, Petitioner, contends that an evidentiary harpoon denied him due process. Petition, 5-3. In Ground Six, Petitioner complains that admission of evidence more prejudicial than probative denied him due process. Petition, 5-3. In Ground Seven, Petitioner alleges that the admission of a threat

_____

pages will be referred to as 5-1, 5-2, 5-3, etc.

[2]Petitioner was also charged with trafficking in illegal drugs (Count 3), conspiracy to commit trafficking in illegal drugs (Count 4), distribution of a controlled dangerous substance (Count 5) and conspiracy to distribute a controlled dangerous substance (Count 6), but the jury was unable to reach a verdict on these counts and thus the judge declared a mistrial on those counts.

made by him denied him due process of law. Petition, 5-4. In Ground Eight, Petitioner argues that his excessive, disproportionate sentences subjected him to cruel and unusual punishment. Petition, 5-4. In Ground Nine, Petitioner complains that cumulative error denied him due process. Petition, 5-5. In Ground Ten, Petitioner contends that evidence was improperly admitted. Petition, 5-5. In Ground Eleven, Petitioner claims that the denial of a directed verdict deprived him of due process. Petition, 5-6. In Ground Twelve, Petitioner alleges that an expert witness was improperly certified. Petition, 5-6. In Ground Thirteen, Petitioner argues that trial counsel rendered ineffective assistance. Petition, 5-7. In Ground Fourteen, Petitioner contends that errors were made during voir dire. Petition, 5-7. In Ground Fifteen, Petitioner complains that the admission of photographs denied him due process. Petition, 5-8. In Ground Sixteen, Petitioner argues that improper identification denied him due process. Petition, 5-8. In Ground Seventeen, Petitioner alleges double jeopardy. Petition, 5-9. In Ground Eighteen, Petitioner contends that his appellate counsel rendered ineffective assistance. Petition, 5-9. In Ground Nineteen, Petitioner complains that the failure to provide him transcripts at the State's expense on post-conviction relief denied him due process. Petition, 5-10. Finally, in Ground Twenty, Petitioner argues that failure to hold an evidentiary hearing on his application for post-conviction relief denied him due process. Petition, 5-10.

## I. BACKGROUND

On August 8, 2005, a confidential informant (CI) working with agents of the Drug Enforcement Administration, contacted Scott Strebeck, an intermediary for Petitioner, to buy

methamphetamine.  Trial Tr. Vol. I, 26; Trial Tr. Vol. II, 78, 83, 150, 151.  After Mr. Strebeck verified with Petitioner that he could obtain the necessary methamphetamine, the CI met Mr. Strebeck at 40 North Apartments in Stillwater, Oklahoma.  Trial Tr. Vol. I, 27, Trial Tr. Vol. II, 86, 153.  Mr. Strebeck then called Petitioner who instructed Mr. Strebeck to meet him at the Wal-Mart parking lot in Stillwater.  Trial Tr. Vol. I, 28; Trial Tr. Vol. II, 90, 153.  During the transaction, Mr. Strebeck acted as the intermediary by obtaining the methamphetamine from Petitioner, selling it to the CI, and rendering the money to Petitioner.  Trial Tr. Vol. I, 32, 36; Trial Tr. Vol. II, 93, 96, 154, 156.  The CI and Mr. Strebeck then left the parking lot, and eventually, the CI met with agents from the Drug Enforcement Administration to deliver the methamphetamine.  Trial Tr. Vol. I, 35, 37; Trial Tr. Vol. II, 97, 157.

## II.  STANDARD GOVERNING PETITIONS FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have been adjudicated in state court, a federal district court may only grant a writ of habeas corpus if the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  A state court's determination is contrary to clearly established federal law if it applies a rule that contradicts the law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a Supreme Court decision but arrives at a different result.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court's determination involves an unreasonable application of clearly established federal law if it identifies the correct governing legal principle from Supreme Court decisions but unreasonably applies that principle to the facts of the petitioner's case.  Williams, 529 U.S. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Williams, 529 U.S. at 411.

## III.  DISCUSSION

### A.  CLAIMS INADEQUATELY BRIEFED

Respondent argues that Petitioner has waived the claims raised in Grounds Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen and Sixteen as Petitioner has simply listed the grounds for relief without any factual support.  Response, 48-49.  Respondent further argues that while the Court should construe Petitioner's pro se pleadings liberally, the Court cannot construct Petitioner's arguments for him or search the record for support for the arguments.  Response, 49.  The undersigned agrees.

In his Petition, Petitioner lists the "supporting facts" for Grounds Ten thru Sixteen as "See attached 'Statement of Facts.'"  Petition, 5-5, 5-6, 5-7, 5-8.  His "Statement of Facts" consists of repeating these grounds for relief and then citing "Tr. I, ___, II ___, III ___."  Petition, 5-11, 5-12.  While Petitioner may not have access to the transcripts to provide the proper citations to the record, such is not required.  All he is required to do is to provide the Court with enough facts supporting his grounds for relief for the Court to review the claims.

Obviously, Petitioner should be in possession of those facts as he was present at trial and presumably knows what errors he is alleging to have occurred during the trial.

This Court's function is not to "supply additional factual allegations . . . or construct a legal theory on a [litigant's] behalf," <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997), because doing so "borders on advocacy," and requires speculations as to what Petitioner wished to argue in support of these claims. <u>See</u> <u>Richards v. Bellmon</u>, 941 F.2d 1015, 1019 n.3 (10th Cir. 1991). Further, while it is true that as a pro se litigant, Petitioner is entitled to liberal construction of his pleadings, he nevertheless is obligated to "state the facts supporting each ground." Rule 2(c), Rules Governing Section 2254 Cases. The broad reading of the petition does not relieve Petitioner "of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . [because he] requires no special legal training to recount the facts surrounding his alleged injury." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).

Petitioner does not provide any facts to support the claims raised in Grounds Ten thru Sixteen, and as such, the Court is left only with generalized assertions of error, which is not enough to warrant habeas relief. <u>See</u> <u>Graham v. Addison</u>, No. 08-7071, 304 Fed. Appx. 670, 672 n.1 (10th Cir. Dec. 19, 2008) ("Because several of [Petitioner's] arguments are best characterized as 'general assertion[s] of error' or 'mere conclusory allegations,' 'we cannot fill the void by crafting arguments and performing the necessary legal research' for him."

(quoting <u>Garrett v. Selby Connor Maddux & Janer</u>, 425 F.3d 836, 841 (10th Cir. 2005) (second alteration in original)), <u>cert. denied</u>, 130 S. Ct. 402 (2009).[3]

For the same reasons stated above, the undersigned finds that Petitioner has also waived his claims that his convictions violated double jeopardy (Ground Seventeen) and that he received ineffective assistance of appellant counsel (Ground Eighteen).

Regarding Petitioner's claim of ineffective assistance of appellate counsel, Petitioner cites only to "Brief of Appellant" and provides no argument, citation to relevant authorities, or statement of relevant facts. Petition, 5-12. Respondent contrues Petitioner's argument as asserting ineffective assistance for failing to argue Petitioner's claims of (1) improperly admitted evidence, (2) improper denial of directed verdict, (3) improper certification of expert witness, (4) ineffective assistance of trial counsel, (5) error in voir dire, (6) improper admission of photographs, (7) improper identification, and (8) double jeopardy. Response, 27. The Oklahoma Court of Criminal Appeals found that the record did not support Petitioner's claim of ineffective assistance of appellate counsel. <u>Thompson v. State</u>, No. PC-2009-18, at 2 (Okla. Crim. App. Mar. 26, 2009) (attached to Response as Ex. 9).

Petitioner fails to allege how his appellate counsel rendered ineffective assistance. Petitioner's citation to "Brief of Appellant" provides no support for his claims and fails to apprise the Court of the substance of his arguments. If by "Brief of Appellant" Petitioner is referring to his brief on direct appeal, Petitioner's claim must fail because absent specific

---

[3]This and any other unpublished dispositions are cited pursuant to Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

allegations, the Court cannot scour that brief to determine whether appellate counsel rendered ineffective assistance. See Graham, 304 Fed. Appx. at 672 n.1 ("[W]e cannot fill the void by crafting arguments and performing the necessary legal research for [Petitioner]." (internal quotation marks omitted)). If Petitioner is referring to his application for post-conviction relief in which he states that appellate counsel rendered ineffective assistance for failing "to raise the meritorious claims raised herein," Petitioner's claim also fails because he fails to allege which claims are meritorious and, as shown below, because he has not raised any meritorious claims. Application for Post-Conviction Relief, 5 (attached to Response as Ex. 6). Accordingly, the undersigned recommends that federal habeas relief be denied on Grounds Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.

## B. EVIDENTIARY PROBLEMS

Petitioner claims that he was denied due process based on the following evidentiary problems at trial: (1) failure to sequester the jury (Ground Three), (2) improper admission of hearsay testimony (Ground Four), (3) evidentiary harpoon (Ground Five), (4) admission of evidence more prejudicial than probative (Ground Six), and (5) admission of a threat made by petitioner (Ground Seven). Petition, 5-2 to 5-4. Respondent argues that these claims are not cognizable on federal habeas review because they involve questions of state law which was not unreasonably applied. Response, 33.

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002) ("Generally

speaking, a state court's misapplication of its own evidentiary rules . . . is insufficient to grant habeas relief."). On habeas review, this Court can only review state court evidentiary rulings "'to determine whether the error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Hooker v. Mullin, 293 F.3d 1232, 1238 (10th Cir. 2002) (quoting Williamson v. Ward, 110 F.3d 1508, 1522 (10th Cir. 1997)). In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation. Fields v. Gibson, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience. Aycox v. Lytle, 196 F.3d 1174, 1180 (10th Cir. 1999).

"Because a fundamental-fairness analysis is not subject to clearly definable legal elements, when engaged in such an endeavor a federal court must tread gingerly and exercise considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (internal quotation marks and brackets omitted). The "[i]nquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner . . . [and] [a]ny cautionary steps–such as instructions to the jury–offered by the court . . . ." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002) (citation omitted).

## 1.  FAILURE TO SEQUESTER THE JURY

Petitioner argues that the trial court's failure to sequester the jury after the first day of jury deliberations denied him due process.  Petition, 5-2, 5-11.  Respondent argues that Petitioner waived any error that may have resulted by failing to object at trial to the court's decision not to sequester the jury.  Response, 35-36.  Respondent also claims that Petitioner did not show that failure to sequester the jury prejudiced him in any way and that there is no evidence of juror misconduct.  Response, 36, 37.

During the first day of deliberations, the jury became deadlocked on each of the counts, and the trial court decided to adjourn for the day.  Trial Tr. Vol. III, 69-70.  Before adjourning, the trial judge instructed the jurors to not discuss the case with anyone and to not read, listen to, or watch any news reports on the case.  Trial Tr. Vol. III, 70.  Neither party objected to the trial court's decision to not sequester the jury.  Trial Tr. Vol. III, 71.  The Oklahoma Court of Criminal Appeals found that Petitioner waived appellate review of this issue when he did not object at trial.  Thompson v. State, No. F-2007-270, at 4 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

"[A]lthouh there is a constitutional right to a fair trial, there is no absolute right to have one's jury sequestered in a criminal case, capital or otherwise."  Matthews v. Simpson, 603 F. Supp. 2d 960, 1067-68 (W.D. Ky. 2009).  "The decision to sequester [the jury] 'is left to the sound discretion of the trial judge.'"  United States v. Floyd, 81 F.3d 1517, 1528 (10th Cir. 1996) (quoting United States v. Hall, 536 F.2d 313, 326 (10th Cir. 1976).  Here, Petitioner has not shown that failure to sequester the jury was so grossly prejudicial that it

denied him due process. Petitioner did not object to the trial court's decision to not sequester the jury, and the trial court admonished the jury that they were not to speak to anyone or read, listen to, or watch any news reports regarding the case. Further, there is no evidence of any juror misconduct, and no irregularities were reported concerning juror misconduct. Accordingly, the undersigned recommends that habeas relief be denied on Ground Three.

## 2. ADMISSION OF HEARSAY TESTIMONY

In Ground Four, Petitioner alleges that he was denied due process when the trial judge admitted three different hearsay statements during the testimony of the State's witnesses. Petition, 5-2, 5-11. Respondent argues that the statements were not hearsay because the declarants testified at trial and were available for cross examination and that Petitioner's claim is a matter of state law not cognizable on federal habeas review. Response, 40.

The alleged hearsay statements are as follows: first, during direct examination, the CI stated that he knew Petitioner had arrived at the Wal-Mart parking lot because Mr. Strebeck told him, "Here is Mikey. Mikey is here." Trial Tr. Vol. I, 30. Petitioner did not object to the admission of this statement. Second, during direct examination, Brent Wellden, a task force officer with the Drug Enforcement Administration, testified to the following regarding his jailhouse interview of the CI:

Q. Okay. And did the name Benjamine Michael Thompson come up?
A. Yes. It did.
Q. And relate to the jury how that name came up.
A. [The CI] in specific was talking about Mike Thompson. He had told me about conversations that he had with Scott Strebeck.
    MS. BOYCE: Your Honor, I object. It's hearsay. He's talking about two other people[']s conversation.

THE COURT: Well it's not hearsay yet tolt [sic] the question and the answer that's been given yet.

A. [CI] was telling me about the conversations that he had had with Strebeck and other conversations that he had with other people within the network of w[h]ere their methamphetamine was coming from. I knew through previous investigations, when he said, "Mikey Thompson," exactly who he was talking about.

Trial Tr. Vol. II, 73-74. Petitioner made no further objections. Finally, during cross-examination, Officer Wellden testified that Mr. Strebeck told him that during the transaction on August 8, 2005, he gave the money he received from the CI to Petitioner. Trial Tr. Vol. II, 132. Petitioner did not object. The Oklahoma Court of Criminal Appeals found the issue waived for failure to object and in reviewing the claim for plain error, the Court found the claim to be without merit. Thompson v. State, No. F-2007-270 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

The admission of these statements was not so arbitrary and capricious as to violate Petitioner's due process rights. The statements do not appear to be offered for the truth of the matter asserted, but rather as background for the actions taken by the officers. Even assuming that these statements were hearsay, Mr. Strebeck's testimony supported each of the statements. Mr. Strebeck testified that on August 8, 2005, he made arrangements to acquire methamphetamine from Petitioner, he met Petitioner in the Wal-Mart parking lot in Stillwater, and he gave Petitioner the money he had received from the CI for the methamphetamine. Trial Tr. Vol. II, 151, 154. Thus, the alleged hearsay statements were cumulative or corroborative of other evidence, and any error in their admission was harmless. See United States v. Dixon, No. 07-1178, 268 Fed. Appx. 767, 771 (10th Cir. Mar. 10, 2008)

(admission of hearsay testimony was harmless where, amongst other things, it was "cumulative and corroborative" of other testimony). Accordingly, the undersigned recommends that habeas relief be denied on Ground Four.

### 3. EVIDENTIARY HARPOON

In Ground Five, Petitioner alleges he was denied due process when Robert Ryan, an agent present during the August 8, 2005, drug transaction, testified to an evidentiary harpoon. Petition, 5-3, 5-11. Respondent argues that Petitioner was not deprived of due process because Agent Ryan simply testified to what he observed and thus the statement was not an evidentiary harpoon. Response, 42.

During the direct examination of Agent Ryan, the following occurred:

Q. And did you make any other observations on the evening of August 8, 2005?
A. Yes. I noticed the tag number and relayed that to other officers at the scene on the police radio. I also. As I walked by the vehicle, the window [was] down partly, and I could tell that an obvious strong odor that I associated with burning marijuana [was] [e]m[a]nating from the vehicle as I walked past.

Trial Tr. Vol. II, 196-97. The Oklahoma Court of Criminal Appeals reviewed the claim for plain error as no objection was raised at trial, and the Court found that Agent Ryan's statement was in response to the prosecutor's questions and was not "willfully jabbed or voluntarily injected." Thompson v. State, No. F-2007-270, at 5 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

"An 'evidentiary harpoon' is a metaphorical term of art that has been used by several state courts to describe the situation where a government witness, while testifying in a

criminal case, deliberately offers inadmissible testimony with the purpose of prejudicing the defendant." United State v. Hooks, 780 F.2d 1526, 1535 n.3 (10th Cir. 1986). Here, it cannot be said that Agent Ryan's comment that he smelled burning marijuana emanating from Petitioner's car rendered Petitioner's trial fundamentally unfair. As stated below, sufficient evidence was tendered at trial for the jury to find Petitioner guilty. Thus, any prejudicial effect Agent Ryan's statement may have had was minimal. Accordingly, the undersigned recommends that habeas relief be denied on Ground Five.

### 4. ADMISSION OF PREJUDICIAL EVIDENCE

In Ground Six, Petitioner alleges that the admission of evidence regarding the deleterious nature and effects of the methamphetamine business denied him due process because that evidence was more prejudicial than probative. Petition, 5-3, 5-11. Respondent argues that Petitioner was not deprived of his due process rights because the evidence merely showed the dangerous effects of methamphetamine and why law enforcement officers proceeded cautiously in conducting their investigation. Response, 46.

At trial, Officer Wellden testified that methamphetamine is an epidemic, the methamphetamine business is violent because the drug causes users to become paranoid and aggressive, the business revolves around trying to scam each other, and the drug is highly destructive and the worst drug on the street. Trial Tr. Vol. II, 70, 87, 95, 122. The Oklahoma Court of Criminal Appeals reviewed this claim for plain error as no objection was made at trial and the Court found that the trial court did not err in admitting the evidence. Thompson

v. State, No. F-2007-270, at 5 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

Admission of this evidence did not render Petitioner's trial fundamentally unfair. Petitioner has not alleged or shown that the jury was prejudiced by this testimony, and without such proof, this Court will not assume prejudice. See Graham v. Addison, No. 08-7071, 304 Fed. Appx. 670, 672 n.1 (10th Cir. Dec. 19, 2008) ("'[W]e cannot fill the void by crafting arguments and performing the necessary legal research' for [Petitioner]." (quoting Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 841 (10th Cir. 2005))), cert. denied, 130 S. Ct. 402 (2009). Further, the testimony helped to explain the caution law enforcement officers took in conducting the investigation, and explained why they used monitoring and recording devices. Further, even assuming it was prejudicial, it was not so prejudicial as to shock the judicial conscience. Accordingly, the undersigned recommends that habeas relief be denied on Ground Six.

### 5. ADMISSION OF THREAT

In Ground Seven, Petitioner alleges that admission of a threat made by him during the second stage of trial denied him due process. Petition, 5-4, 5-11. Respondent argues that admission of the threat did not deprive Petitioner of due process because the trial court did not abuse its discretion in admitting it. Response, 47.

During the sentencing phase of trial, Brandon Myers, the jail supervisor with the Payne County Sheriff's Department, testified that as he was walking Petitioner back to the detention center, Petitioner said that he was going to kill Mr. Strebeck when they both got

to prison. Trial Tr. Vol. IV, 27. The Oklahoma Court of Criminal Appeals again reviewed this claim for plain error as no objection was made at trial, and the Court found that the trial court did not abuse its discretion in admitting this testimony. <u>Thompson v. State</u>, No. F-2007-270, at 6 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

Even assuming that admission of the threat was inappropriate, its admission did not render Petitioner's trial fundamentally unfair. As stipulated to by Petitioner during the sentencing phase of trial, he had six prior felony convictions. Trail Tr. Vol. IV, 21. Under Oklahoma law, these prior convictions allowed the jury to sentence Petitioner to anywhere between six years to life in prison on both counts. <u>Compare</u> Okla. Stat. tit. 63, § 2-401(B)(2) (distribution of schedule I, II, III, or IV controlled dangerous substance punishable by imprisonment for not less than two years or more than life), <u>with</u> Okla. Stat. tit. 21, § 51.1(C) ("Every person who, having been twice convicted of felony offenses, commits a subsequent felony offense within ten (10) years of the date following the completion of the execution of the sentence . . . is punishable by imprisonment in the State Penitentiary for a term in the range of three times the minimum term for a first time offender to life imprisonment."). Thus, because Petitioner's sentence of one hundred years on both counts was within the statutory limit, the undersigned cannot say that admission of the threat resulted in a fundamentally unfair sentence. Accordingly, the undersigned recommends that habeas relief be denied on Ground Seven.

## C. SUFFICIENCY OF THE EVIDENCE

In Ground One, Petitioner alleges that the evidence offered at trial was insufficient to support his convictions. Petition, 5-1. Specifically, Petitioner cites to the testimony of several witnesses who state that they never saw Petitioner exchange drugs for money on August 8, 2005, and they were unable to identify Petitioner as Mr. Strebeck's August 8, 2005, supplier. Petition, 5-11. Petitioner also points to testimony alleging that there were three other "Michaels" in the methamphetamine business in Stillwater and that the car Petitioner drove to the Wal-Mart parking lot, a green Mustang, was not registered in his name. Petition, 5-11. Respondent argues that the evidence at trial was sufficient to show that Petitioner possessed the methamphetamine sold to the CI and Petitioner received all the money from that sale. Response, 8. Respondent also contends that the evidence was sufficient to show that Petitioner entered into an agreement with Mr. Strebeck to distribute methamphetamine. Response, 9.

The Oklahoma Court of Criminal Appeals construed Petitioner's argument as alleging that Mr. Strebeck's testimony was not sufficiently corroborated as required by Oklahoma law. Thompson v. State, No. F-2007-270, at 2 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3). The Court found that the testimony of the law enforcement officers and the CI adequately corroborated Mr. Strebeck's testimony and was sufficient to support Petitioner's convictions. Thompson, No. F-2007-270, at 3.

Judicial review of a challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a _rational_ decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).  For habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, _any_ rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support conviction.  Lucero v. Kerby, 133 F.3d 1299, 1312 (10th Cir. 1998).  In applying this standard, the reviewing court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" Messer v. Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993)).  "The inquiry is based upon the entire record and the reasoning process actually used by the trier of fact, known or not, is not considered."  Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).

The standard for sufficiency of the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16.   In Oklahoma, a person commits the crime of distributing methamphetamine when he (1) knowingly or intentionally, (2) distributes, (3) methamphetamine.  Oklahoma Uniform Jury Instructions–Criminal, 6-2 (citing Okla. Stat. tit. 63, § 2-401(A)(1)) (attached to Response as Ex. 11).  A person commits the crime of conspiracy to distribute methamphetamine when he (1) agrees with one or more persons, (2) to distribute methamphetamine, (3) he was a party to the agreement at the time it was made,

and (4) an overt act is performed by one or more of the parties after forming the agreement. Oklahoma Uniform Jury Instructions–Criminal, 2-17 (attached to Response as Ex. 11).

Even though some of the State's witnesses could not identify Petitioner as Mr. Strebeck's supplier of methamphetamine on August 8, 2005, enough evidence existed for the jury to convict Petitioner of the crimes detailed above. While the CI testified that the first time he saw Petitioner was at trial, he also testified that Petitioner called Mr. Strebeck on August 8, 2005, to arrange a drug transaction at the Wal-Mart parking lot, that Mr. Strebeck obtained methamphetamine from Petitioner, and that Mr. Strebeck gave Petitioner the money used to purchase the methamphetamine. Trial Tr. Vol. I, 28, 30, 31, 32, 36. Officer Wellden testified that his previous investigations and subsequent interviews with Mr. Strebeck revealed that Petitioner supplied Mr. Strebeck with methamphetamine and that his visual and audio surveillance of the August 8, 2005, drug transaction indicated that Petitioner supplied Mr. Strebeck with the methamphetamine purchased by the CI. Trial Tr. Vol. II, 74, 82, 90, 91, 92, 93, 96, 137, 146. Based on his investigation, Officer Wellden identified Petitioner during trial. Trial Tr. Vol. II, 76. Mr. Strebeck testified that Petitioner supplied him with methamphetamine and that on August 8, 2005, he obtained methamphetamine from Petitioner which he then sold to the CI and gave the money to Petitioner. Trial Tr. Vol. II, 150, 151, 154, 156, 173, 188. Mr. Strebeck also identified Petitioner during trial as his supplier of methamphetamine on August 8, 2005. Trial Tr. Vol. II, 156, 170. Robert Ryan, an agent with the Drug Enforcement Administration, identified Petitioner as the person he saw sitting in the green Mustang in the Wal-Mart parking lot on August 8, 2009, testified that he

watched someone make contact with Petitioner while Petitioner was sitting in the green Mustang, and testified that after the transaction he watched Petitioner enter and then exit the Wal-Mart. Trial Tr. Vol. II, 194, 195, 211-12. Further, Petitioner's arguments are unavailing because Petitioner is in essence asking the Court to reweigh the evidence, and under the <u>Jackson</u> standard, the trier of fact has full responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Accordingly, the undersigned recommends that habeas relief be denied on Ground One.

### D.  PROSECUTORIAL MISCONDUCT

In Ground Two, Petitioner claims that prosecutorial misconduct deprived him of a fair trial. Petition, 5-1. Specifically, Petitioner claims that during closing arguments, the prosecutor improperly opined that he believed Petitioner was guilty, misrepresented the evidence, and bolstered witness' credibility. Petition, 5-11. Respondent argues that the prosecutor's statements were well within the wide latitude allowed during closing arguments. Response, 10. Respondent alleges that the prosecutor's comments regarding Petitioner's guilt were merely his opinion that he had proven his case based on the evidence presented. Response, 11. Respondent contends that the alleged misstatements of evidence were actually fair comments on the evidence and did not affect the outcome. Response, 12. Respondent argues that the alleged bolstering were the prosecutor's observations and an attempt to rebut Petitioner's allegations that the State's witnesses had a vendetta against him. Response, 16.

The Oklahoma Court of Criminal Appeals noted that Petitioner's failure to object to the allegedly improper conduct waived all but plain error, and the Court found that the prosecutor's statements and questions did not rise to the level of plain error. Thompson v. State, No. F-2007-270, at 3 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

On federal habeas review, claims of prosecutorial misconduct generally are reviewed for a violation of due process. Hamilton v. Mullin, 436 F.3d 1181, 1187 (10th Cir. 2006). To be entitled to relief, Petitioner must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Hamilton, 436 F.3d at 1187 (internal quotation marks omitted). To determine whether a trial is rendered fundamentally unfair, the court examines the entire proceeding, "'including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase' as well as '[a]ny cautionary steps . . . offered by the court to counteract improper remarks.'" Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006) (first alteration in original) (quoting Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002)). "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland, 459 F.3d at 1024.

If the alleged prosecutorial misconduct affects a specific constitutional right, "a habeas petitioner need not establish that the entire trial was rendered unfair, but rather that

the specific <u>constitutional guarantee</u> was so prejudiced that it effectively amounted to a denial of that right." <u>Hamilton</u>, 436 F.3d at 1187 (internal brackets omitted) (citing <u>Torres v. Mullin</u>, 317 F.3d 1145, 1158 (10th Cir. 2003)).

A review of the prosecutor's closing arguments does not show any instance of prosecutorial misconduct. Regarding Petitioner's expression of guilt claim, the prosecutor stated a number of times that he had proven his case beyond a reasonable doubt. Trial Tr. Vol. III, 11, 32, 33, 53, 63. However, when viewed in context, it is clear that the prosecutor was merely arguing to the jury that he had proven his case. Before the first statement that Petitioner complains of, the prosecutor went over the elements of each offense with which Petitioner was charged, then connected the evidence to each of the elements, before he submitted to the jury that he had proven his case beyond a reasonable doubt. Trial Tr. Vol. III, 7-10. However, the prosecutor reminded the jury on several occasions that if the jury found that he had not met his burden to prove Petitioner guilty beyond a reasonable doubt, the jury had to find the Petitioner not guilty. Trial Tr. Vol. III, 10, 13-14, 19-20, 53, 68. Further the prosecutor reminded the jury that he had to prove his case from the evidence submitted and not from his argument. Trial Tr. Vol. III, 33, 67. Lastly, the prosecutor reminded the jury that it was up to them to determine the weight of the evidence and the credibility of the witnesses. Trial Tr. Vol. III, 53, 56. The Petitioner has not shown that the decision by the Oklahoma Court of Criminal Appeals was contrary to or an unreasonable application of federal law.

Regarding his claim of misrepresentation of the evidence, Petitioner merely cites to the record but does not state which comments were misrepresentations or argue how the evidence should have been properly presented to the jury. A review of the first two cites by Petitioner, Trial Tr. Vol. III, 26, 64, does not reveal to the undersigned any misstatement of the evidence by the prosecutor. Petitioner may be contending that the prosecutor misstated the evidence when he said, "It was this defendant, who each one of those officers indicated as a combined unit, they saw this defendant at the location, where the drug sale took place . . ." Trial Tr. III, 64. While only Agent Ryan specifically identified the Petitioner as the person in the Wal-Mart parking lot, other officers identified him by the type of vehicle he was in and Mr. Strebeck testified it was Petitioner from whom he got the drugs and to whom he gave the money. Thus, the statement considered in context was not a misrepresentation of the evidence. Petitioner further cites to Trial Tr. Vol. III, 66 in support of his argument that the prosecutor misrepresented the evidence. On direct appeal, Petitioner complained of the following statement: "As far as any possibility of trying to get prints off the inside of the bag, it's impossible." Trial Tr. Vol. III, 66. This argument appears to be in response to Petitioner's attorney's argument in her closing that the agents could have attempted to get fingerprints from the baggies in which the methamphetamine was delivered, but the agents made a conscious decision to not have the baggies analyzed for fingerprints. Trial Tr. Vol III, 40-42. The chemist, on cross-examination by Petitioner's attorney, testified that the baggies were not tested for fingerprints, but that latent fingerprint examiners were located within his building. Trial Tr. Vol. II, 40-41, 43. Following that testimony, the prosecutor

23

offered the testimony of Officer Wellden that he did not ask to have the baggies fingerprinted because the baggies were "sweaty and nasty" and several different people had handled them. Trial Tr. Vol. II, 118-119. Thus, when considered it context, the prosecutor's statement during closing argument was a fair comment on the evidence. Immediately following his statement that it would have been impossible to get fingerprints off the baggies, the prosecutor listed each person who had handled the baggies and commented on the size of the baggies in an attempt to persuade the jury that fingerprint evidence could not be obtained from them. Trial Tr. Vol. III, 66-67.

Finally, regarding Petitioner's bolstering of witness' credibility claim,the prosecutor argued that Mr. Strebeck was a credible witness and was testifying not because he had a vendetta against Petitioner or to avoid a prison sentence but because he wanted "to do the right thing and tell the truth." Trial Tr. Vol. III, 12, 14, 16, 59-60. Even, assuming these statements were error, they did not render Petitioner's trial fundamentally unfair. A central theme of Petitioner's defense was to attack the credibility of his co-conspirator, Mr. Strebeck, as Mr. Strebeck was the one who testified he got the methamphetamine from the Petitioner, sold it to the confidential informant and then gave the money to the Petitioner. During her opening statement, Petitioner's attorney argued that Mr. Strebeck was angry with Petitioner for dating his girlfriend after she dumped Mr. Strebeck for Petitioner. Trial Tr. Vol. I, 23. During her closing argument, Petitioner's attorney argued that Mr. Strebeck lied to the jury, that he was upset because his girlfriend had dumped him for Petitioner, that he was testifying against Petitioner to protect his ex-girlfriend who was the actual methamphetamine supplier,

and that his testimony could not be trusted. Trial Tr. Vol. III, 35, 43, 45-47. Thus, the prosecutor's comments were not improper bolstering but merely responded to Petitioner's assertions that Mr. Strebeck could not be trusted. See United States v. Tyler, Nos. 00-6284, 00-6341, 42 Fed. Appx. 186, 194 (10th Cir. June 21, 2002) (prosecutor's comments that government's witnesses were credible was not improper bolstering where attacking credibility of government's witnesses was a central theme of defendant's case), post-conviction relief granted on other grounds sub nom. United States v. Collins, Nos. CR-99-216-M, CIV-03-680-M, 2006 WL 840354 (W.D. Okla. Mar. 28, 2006). Further, the prosecutor reminded the jury that it was their decision as to the credibility of the State's witnesses, Trial Tr. Vol. III., 12, 29, 55-56, 67-68, and he reminded the jury of the judge's instruction that arguments of counsel were not evidence. Trial Tr. Vol. III, 17. Accordingly, the undersigned recommends that habeas relief be denied on Ground Two.

### E. EXCESSIVE, DISPROPORTIONATE SENTENCES

In Ground Eight, Petitioner argues that his sentences are excessive and disproportionate and violate the Eighth Amendment's prohibition against cruel and unusual punishment. Petition, 5-4, 5-11. Respondent contends that Petitioner's Eighth Amendment rights were not violated because Petitioner's sentences are within the statutory range and do not present an extraordinary case under the Eighth Amendment. Response, 20.

The Oklahoma Court of Criminal Appeals found that Petitioner's sentences were within the statutory range and that after six prior felony convictions, they did not shock the

conscience of the Court.  <u>Thompson v. State</u>, No. F-2007-270, at 6 (Okla. Crim. App. May 16, 2008) (attached to Response as Ex. 3).

A state sentence raises federal constitutional concerns when it is grossly disproportionate to the crime committed.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 72 (2003); <u>Hawkins v. Hargett</u>, 200 F.3d 1279, 1281-82 (10th Cir. 1999) (applying <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991)).  In reviewing a sentence for gross disproportionality, a federal habeas court should be reluctant to "interfere with the legislative determination of an appropriate sentence range."  <u>Hawkins</u>, 200 F.3d at 1285.  If an initial comparison of the offense and the sentence does not lead to an inference that the punishment is grossly disproportionate to the crime, a federal habeas court's examination of the sentence ends.  <u>See Hawkins</u>, 200 F.3d at 1282; <u>see also</u> <u>United States v. Gurule</u>, 461 F.3d 1238, 1247 (10th Cir. 2006).  As stated recently by the Tenth Circuit Court of Appeals, the gross disproportionality principle has rarely resulted in relief from an allegedly excessive sentence:

> Although the Supreme Court has reviewed Eighth Amendment challenges to a number of state and federal sentences, it has struck down only two of them over the past century.  In [1910], the Court invalidated under the Eighth Amendment a sentence of fifteen years in chains and at hard labor, plus permanent surveillance and civil disabilities, for the crime of falsifying a public document.  Seventy-three years later, in [1983], the Court invalidated under the Eighth Amendment a sentence of life imprisonment without the possibility of parole imposed under South Dakota law against a nonviolent recidivist whose final crime was writing a "no account" check with the intent to defraud.
>
> In contrast to these two cases, the Supreme Court has rejected Eighth Amendment challenges to the following sentences:

• A life sentence, with the possibility of parole, under a Texas recidivist statute for successive convictions of (1) fraudulent use of a credit card to obtain $80 worth of goods or services, (2) passing a forged check in the amount of $28.36, and (3) obtaining $120.75 by false pretenses.

• A forty-year sentence for possession and distribution of 9 ounces of marijuana.

• A life sentence, without the possibility of parole, for possession of more than 650 grams of cocaine.

• A twenty-five year to life sentence imposed under a California recidivist statute for the offense of felony grand theft (i.e., stealing three golf clubs worth approximately $1,200).

• Two consecutive twenty-five-year to life sentences under a California recidivist statute for two counts of petty theft.

Considered together, these cases clearly support the Supreme Court's recent statement in Andrade that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case."

United States v. Angelos, 433 F.3d 738, 750-51 (10th Cir. 2006) (third alteration in original) (citations omitted) (quoting Andrade, 538 U.S. at 76); Haney v. Addison, No. 07-6269, 275 Fed. Appx. 802, 807 (10th Cir. Apr. 30, 2008), cert. denied 129 S. Ct. 766 (2008).

The undersigned finds that Petitioner's 100 year sentence on each of the two counts does not warrant federal habeas relief. Given Petitioner's six prior felony convictions, Trial Tr. Vol. IV, 21, the sentences fall within the statutory range. Compare Okla. Stat. tit. 63, § 2-401(B)(2) (distribution of schedule I, II, III, or IV controlled dangerous substance punishable by imprisonment for not less than two years or more than life), with Okla. Stat. tit. 21, § 51.1(C) ("Every person who, having been twice convicted of felony offenses,

commits a subsequent felony offense within ten (10) years of the date following the completion of the execution of the sentence . . . is punishable by imprisonment in the State Penitentiary for a term in the range of three times the minimum term for a first time offender to life imprisonment."). Furthermore, it is not grossly disproportionate to sentence Petitioner to 100 years imprisonment on each count after six prior felony convictions. See United States v. Couchman, No. 08-6188, 329 Fed. Appx. 836, 838 (10th Cir. May, 27, 2009) (sentences within statutory limits usually do not violate Eighth Amendment). Accordingly, the undersigned recommends that habeas relief be denied on Ground Eight.

## F. CUMULATIVE ERROR

In Ground Nine, Petitioner claims he was denied due process as a result of cumulative error. Petition, 5-5. Respondent argues that any trial errors were harmless, both individually and cumulatively, in light of the evidence which overwhelmingly proved Petitioner's guilt. Response, 25. The Oklahoma Court of Criminal Appeals found that there was no accumulation of error because there were no individual errors. Thompson v. State, No. F-2007-270, at 6 (Okla. Crim. App. May 16, 2007) (attached to Response as Ex. 3).

"Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error, focusing on the underlying fairness of the trial." Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003) (citations and internal quotation marks and brackets omitted). The cumulative effect of individual harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error. Duckett v. Mullin, 306 F.3d 982, 992 (10th Cir. 2002). The undersigned finds that Petitioner has failed to establish

any harmless error; therefore, there is no basis upon which to find cumulative error. See, e.g., Gonzalez v. Tafoya, 515 F.3d 1097, 1126 (10th Cir. 2008) (denying petitioner's claim that he was prejudiced by the cumulative effect of his counsel's errors where court concluded counsel's performance was not constitutionally deficient and, therefore, there was no error to cumulate), cert. denied 129 S. Ct. 211 (2008); United States v. Caballero, 277 F.3d 1235, 1250 (10th Cir. 2002) ("Cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."). Accordingly, the undersigned recommends that habeas relief be denied on Ground Nine.

## G. FAILURE TO PROVIDE TRANSCRIPTS

In Ground Nineteen, Petitioner contends that failure to provide him transcripts of his trial at the State's expense despite his "proper motion and showing of need" denied him due process because he was prevented "from citing specific grounds for error" in his post-conviction relief application. Petition, 5-10, 5-12. Respondent does not address Petitioner's transcript claim. The Oklahoma Court of Criminal Appeals found that under state law Petitioner was not entitled to transcripts at the State's expense because Petitioner's application for post-conviction relief failed to make a showing of need or raise a genuine issue of material fact. Thompson v. State, No. PC-2009-18, at 2 (Okla. Crim. App. Mar. 25, 2009) (attached to Response as Ex. 9). In an order dated November 30, 2009, the undersigned denied Petitioner's motion for production of record wherein Petitioner requested a complete copy of the trial transcript at no cost. Order, 1, 3. In denying Petitioner's motion, the undersigned found that Petitioner's failure to obtain a complete copy of the trial transcript

29

at no cost did not violate his due process rights.  Order, 3.  Further, the undersigned noted that Petitioner's claim regarding the state courts' failure to provide him a complete copy of the trial transcript was not cognizable on habeas review.  Order, 3.  Thus, for the reasons stated in that order, the undersigned finds that failure to provide Petitioner with a complete copy of the trial transcript at the State's expense did not deprive him of due process. Petitioner is not required to provide citations to the record to support his claims, but rather he must only provide facts to the Court to support the claims.  Petitioner provides no facts in support of most of his claims and thus, the undersigned recommends that habeas relief be denied on Ground Nineteen.

## H.  FAILURE TO HOLD AN EVIDENTIARY HEARING

In Ground Twenty, Petitioner alleges that the state court's failure to hold an evidentiary hearing on his application for post-conviction relief despite a "proper motion and existence of facts outside the record" denied him due process because it deprived him of the "opportunity to develop[] factual basis for claims."  Petition, 5-10, 5-12.  Respondent argues that an evidentiary hearing was not required because:

> Petitioner has failed to show that a factual basis for the claims alleged herein was not (sic) made in state court, that the claims rely on a new rule of constitutional law made retroactive by the Supreme Court of the United States, that a factual predicate could not have been discovered in the district court, and that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Response, 2.  The Oklahoma Court of Criminal Appeals found that no evidentiary hearing was required because a genuine issue of material fact did not exist.  <u>Thompson v. State</u>, No.

PC-2009-18, at 2-3 (Okla. Crim. App. Mar. 25, 2009) (attached to Response as Ex. 9). Assuming the Court has the power to grant habeas relief on this claim, the undersigned finds that Petitioner was not denied due process when the district court failed to grant him an evidentiary hearing on his application for post-conviction relief. "The purpose of an evidentiary hearing is to resolve conflicting evidence," and Petitioner has failed to point to any such conflict. <u>Anderson v. Attorney General of Kansas</u>, 425 F.3d 853, 860 (10th Cir. 2005). Accordingly, the undersigned recommends that habeas relief be denied on Ground Twenty.

## **<u>RECOMMENDATION</u>**

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus under § 2254 be denied. Petitioner is advised of the right to file an objection to this Report and Recommendation with the Clerk of the Court on or before June 24, 2010, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Petitioner is further advised that failure to file a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 4th day of June, 2010.


_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE